# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-1061

## CARL NABOURS, M.D., ET AL.

## VERSUS

## CHRISTUS HEALTH SOUTHWESTERN LOUISIANA

\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, DOCKET NO. 2014-1413
## HONORABLE ROBERT L. WYATT, PRESIDING
\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Saunders, J., dissents and assigns written reasons.**

David B. McCain
Jennifer M. Swann
McCain & Swann, L.L.C.
1800 Ryan Street, Suite 102
Lake Charles, LA 70601
(337) 439-4571
**ATTORNEY FOR PLAINTIFFS/APPELLANTS**
    Carl Nabours, M.D., et al.

Williams B. Monk
Kathleen T. Deanda
Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.
127 W. Broad Street
Chase Building, 4th Floor
P.O. Box 2900
Lake Charles, LA 70602
(337) 436-9491
**ATTORNEY FOR DEFENDANT/APPELLEE**
    Christus Health Southwestern Louisiana d/b/a St. Patrick Hospital

1

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

In 1988, Plaintiff, Carl Nabours, M.D., had a family medical practice in Lake Charles, located near St. Patrick Hospital. He maintained hospital privileges at St. Patrick. In that year, Dr. Nabours decided to build a new office building for his practice.

Dr. Nabours became aware of two pieces of property near the hospital owned by St. Patrick that would be suitable for his purposes. According to Dr. Nabours, St. Patrick was interested in maintaining control of its surrounding property to make it available to physicians with hospital privileges. To that end, St. Patrick prepared a Surface Lease on the two properties in question, wherein it would lease the property upon which Dr. Nabours would build a building on each piece of property at his expense. Dr. Nabours maintains to incentivize him to enter into the transaction, the hospital agreed it would purchase the buildings back from him at any time during the lease for the fair market value of the improvements if so requested.

On September 14, 1988, the parties signed the Surface Lease and Dr. Nabours built an office building where he housed his medical practice on one of the pieces of property, Tract A. That same date, Dr. Nabours and the hospital entered into a sub-lease where the hospital agreed to pay $3,600 per month to be able to sub-lease the duplex office building he built on the other piece of property, Tract B. The term of the Surface Lease was for thirty (30) years and six (6) months. The term of the sub-lease was from thirty (30) years after the completion of the construction of the building on Tract B.

Recently, Dr. Nabours made the decision to associate with another area hospital, and decided to move his practice close to that hospital. He then contacted the hospital administrator for St. Patrick to inquire as to the hospital's interest in

2

purchasing the improvements on the leasehold property. He also informed the administrator that in default of the hospital being interested in buying the buildings, he would proceed to try to market the property to other physicians who have privileges with the hospital.

The hospital administrator informed Dr. Nabours the hospital had no interest in purchasing the buildings and that he should proceed with the alternative plan. According to Dr. Nabours, the hospital administrator indicated the hospital would extend the length of time of the Surface Lease to cooperate with the sale.

Dr. Nabours stated he found some physicians with privileges at St. Patrick, and entered into a written agreement for the purchase of his former office building located on Tract A. According to Dr. Nabours, the two physicians then began discussions with St. Patrick to acquire either a long-term lease or to purchase Tract A.

Dr. Nabours contends that St. Patrick did not cooperate with him in selling the buildings, and in fact made unreasonable demands that Dr. Nabours purchase the land for exorbitant sums. Further, according to Dr. Nabours it would not agree to extend the lease terms to prospective buyers. Dr. Nabours also asserted St. Patrick tried to steer the prospective buyers away from the transaction with him by attempting to sell them other properties in the area owned by the hospital. Dr. Nabours concluded that this pattern of bad faith on the part of St. Patrick "resulted in the impossibility of moving forward with the sale, which cost Dr. Nabours fees and expenses for title examination, survey, appraisal, and other closing costs, for which the hospital owes reimbursement to Dr. Nabours."

On April 8, 2014, Dr. Nabours and his wife, Brenda Palermo Nabours, brought an action against Christus Health Southwestern Louisiana d/b/a St. Patrick Hospital (hereafter Defendant), the successor hospital to St. Patrick, seeking a Declaratory Judgment declaring the rights and obligations of the parties who

executed the lease agreement at issue. Defendant answered the original petition and filed exceptions of prematurity, vagueness and no cause of action.

On June 30, 2015, Plaintiffs filed a First Supplemental and Amending Petition, following an appraisal performed by Ty Hutchins. During negotiations between the parties concerning the possible purchase of the improvements to the land, they agreed to have an appraisal done. When the negotiations failed, Plaintiffs filed a motion for partial summary judgment seeking to enforce the provisions of Paragraph 16 of the Surface Lease and requesting the trial court order Defendant to purchase the buildings for the values set by the appraiser. Plaintiffs noted the appraiser valued Dr. Nabours' buildings at $371,000, and Defendant was informed that Dr. Nabours would accept this amount as payment. Defendant responded that it was not required to purchase the improvements for this appraised value. Plaintiffs maintained the dispute was strictly a matter of interpreting the wording of the lease, a matter appropriate for summary judgment. By stipulation, the parties agreed a cross motion for summary judgment filed by Defendant should be considered as well.

A hearing on Defendant's exceptions and the motions for summary judgment was set. At the hearing, counsel for Defendant did not go forward with his exceptions, acknowledging to the trial court that "everything rides on [the] interpretation [of the language of the lease] that [counsel for Plaintiffs] is addressing through his Motion." The trial court denied Plaintiffs' motion for partial summary judgment and ruled in favor of Defendant on its cross motion for summary judgment. The trial court gave the following oral reasons for judgment:

> It seems relatively clear to the Court that Section 2 provides for the obligation of Christus to purchase the property, the improvements from Dr. Nabours, in the event of death, disability, or retirement.
>
> I believe taken in the context of the entirety of the contract Section 16 provides for the discretionary purchase of the property by Christus from Dr. Nabours.

4

I recognize and understand what [counsel for Dr. Nabours] suggests and argues regarding the wording of Section 16, but the way the Court looks at it in the event that there is an offered price from a third party, it's in the event that someone else wants to buy the property. Christus has the right of first refusal, and it determines how that's going to be determined.

And again, the final sentence provides for the failure of Christus to do that. So I think it is, in fact, a right of first refusal.

Plaintiffs have timely appealed the ruling of the trial court, and ask this court to reverse the trial court's ruling that the wording of the lease between the parties did not require Defendant to purchase the improvements on the property.

## ANALYSIS

Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La.Civ.Code art. 1983; La.Civ.Code art. 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. Whether a contract is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/14/94), 630 So.2d 759.

The relevant portion of the lease between the parties is Paragraph 16, which states as follows:

16. Right of First Refusal

In the event Lessee elects to sell the improvements owned by Lessee on the leased premises during the term of the lease, Lessor shall purchase the same from Lessee at the lower of its fair market value or the offered price in the event of a third party offer to purchase. If Lessor and Lessee cannot agree on the fair market value within thirty (30) days from the notification by Lessee to Lessor of Lessee's desire to sell the same, then in such event Lessor and Lessee shall hire an Independent Appraiser to determine the fair market value of Lessee's improvements. If Lessor and Lessee cannot agree on an Independent Appraiser within thirty (30) days, then Lessor shall appoint the appraiser who shall determine the fair market value thereof within

5

thirty (30) days, of such appointment, which value shall be binding on the parties and Lessor shall purchase Lessee's improvements on the leased premises within thirty (30) days following the establishment of said valuation at the lower of the offered price or the fair market value. Failure of the Lessor to purchase within a time allowed shall permit Lessee to convey the improvements to a third party and assign the lease in accordance with the provisions of Paragraph 6 hereof.

Admittedly, this paragraph has conflicting wording. Dr. Nabours focuses on the part of the paragraph that provides ". . . and Lessor **shall** purchase Lessee's improvements on the leased premises within thirty (30) days following the establishment of said valuation." (Emphasis added.) Defendant maintains, and the trial court agreed, the entirety of Paragraph 16 and other provisions in the lease simply provide Dr. Nabours the right to have Defendant approve the assignment of any remaining rights under the Surface Lease to any purchaser he might reach an agreement to pay a price for the improvement only.

The language in Paragraph 16 specifically set forth the "remedy" Dr. Nabours would have if Defendant elected not to purchase the improvements: "Failure of the Lessor to purchase within a time allowed shall permit Lessee to convey the improvements to a third party and assign the lease in accordance with the provisions of Paragraph 6 hereof." The facts establish Dr. Nabours satisfied his obligation to first offer the improvements to Defendant. However, the language of Paragraph 16 provides, as the holder of the right of first refusal, Defendant is not obligated to buy the improvements. In this case, Defendant declined to buy the improvements at the offered price. Dr. Nabours then demanded the trial court require Defendant to purchase, arguing the term of the Surface Lease mandated specific performance. While the lease allows Plaintiffs to have anyone interested in buying the improvements approach Defendant to negotiate an assignment or

6

extension of the Surface Lease, we cannot say the trial court legally erred in finding Plaintiffs' demand for specific performance is misplaced.[1]

Interpreting the right of first refusal clause in Paragraph 16 as placing an affirmative obligation on Defendant to purchase the improvements would make the final clause in that paragraph, which provides the "failure of the Lessor to purchase" "permit[s] Lessee to convey the improvements to a third party" meaningless. If Defendant was required under the lease to purchase the improvements, this clause would not be needed. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La.Civ.Code art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La.Civ.Code art. 2050. To read Paragraph 16 as Plaintiffs desire is contrary to the rules of contract interpretation as set forth in our civil code.

A review of the entirety of the Surface Lease supports the trial court's finding that Paragraph 16 does not mandate that Defendant purchase the improvements. Paragraph 2.B provides as follows:

2. Term

B. In the event of the death of Carl Nabours, or his permanent disability at any time during the term of the lease when he is occupying the leased premises for his office for the practice of medicine or upon Carl Nabours' retirement from medical practice after no less than fifteen (15) years of occupancy of the improvements constructed upon the leased premises, Lessor will have the obligation to purchase Lessee's improvements at its fair market value determined as though the Surface Lease had a term of fifteen (15) years yet remaining. . .

Paragraph 2.B is only applicable on the condition of Dr. Nabours' death, permanent disability or retirement from the practice of medicine. In that situation,

---

[1] Given the fact only approximately four to five years remained on the term of the lease, it is highly unlikely any potential buyer would be willing to pay the $371,000, the improvements only appraised value as assigned by Mr. Hutchins.

Paragraph 2.B assures that Defendant would "have the obligation" to purchase the improvements and would be given the benefit of an assumption that the Surface Lease is continuing for a total of fifteen years from the date of the appraisal. As Defendant points out, there is no language in Paragraph 2.B providing an alternative remedy (as Paragraph 16 does) that Dr. Nabours could instead sell to a third party and extend the life of the Surface Lease if Defendant does not elect to purchase the improvements. Paragraph 2.B used the full expression "will have the obligation to purchase," and does not provide any alternative scenario, unlike Paragraph 16.

Defendant also calls our attention to Paragraph 8.D, which provides:

> The parties acknowledge that any improvements constructed on the leased premises by Lessee shall at the termination of the Lease Agreement revert to an[d] become the property of Lessor, at the termination of the Lease on any basis except as set forth in Paragraph 2 B or in Paragraph 16 hereof.

Defendant notes under Plaintiffs' interpretation that Defendant is required under Paragraph 16 to purchase the improvements, Paragraph 8.D would be rendered meaningless and there would be no reason for it to be included in the lease. The 30.5 year term in the Surface Lease expires March 14, 2019. At that time, the improvements will become the property of Lessor (Defendant), if not sold prior to that date.

Plaintiffs argue the fact that Paragraph 16 is titled "<u>Right of First Refusal</u>" is not conclusive of anything because Paragraph 19 of the Surface Lease provides "[t]he Article headings contained in this Lease are for convenience only and in no way limit or amplify the provisions of the Lease." We agree the fact that Paragraph 16 is titled "<u>Right of First Refusal</u>" is not conclusive. However, as is discussed above, the language in Paragraph 16 as well as other provisions in the Surface Lease support the trial court's conclusion that Paragraph 16 is not only labeled a right of first refusal, but its clear wording sets forth this right.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Plaintiffs/Appellants.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-1061

CARL NABOURS, M.D., ET AL.

VERSUS

CHRISTUS HEALTH SOUTHWESTERN LOUISIANA

**Saunders, J., dissents and assigns written reasons.**

I disagree with the decision to affirm the trial court's grant of summary judgment in favor of the hospital. In my view, Paragraph 16 is clear in its unambiguous directive that "In the event Lessee elects to sell. . . Lessor *shall* purchase" (emphasis added) the improvements to the property. Such interpretation does not render ineffective the provision that states, "failure of the Lessor to purchase. . . permit[s] Lessee to convey the improvements to a third party." Instead, this provision merely grants the physician an optional remedy. Therefore, I respectfully dissent, as I would reverse and render judgment for the plaintiff.